No. 14-1849 (L)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

## REYNOLDS CONSUMER PRODUCTS LLC, f/k/a/
## Reynolds Consumer Products Inc.,

*Plaintiff-Appellee/Cross-Appellant,*

**v.**

## HANDI-FOIL CORPORATION,

*Defendant-Appellant/Cross-Appellee.*

_____

Cross Appeals from the United States District Court for the Eastern District of
Virginia (Hon. Liam O'Grady) (No. 1:13-cv-00214-LO-TCB)

_____

## OPENING BRIEF FOR DEFENDANT-APPELLANT/
## CROSS-APPELLEE

_____

David K. Callahan
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700

Jonathan Y. Ellis
Jennifer M. Halbleib
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2200

November 12, 2014

*Counsel for Defendant-Appellant/Cross-Appellee Handi-foil Corp.*

# DISCLOSURE OF CORPORATE AFFILIATIONS
# AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No.  14-1849    Caption:  Reynolds Consumer Products LLC, f/k/a Reynolds Consumer Products, Inc. v. Handi-foil Corporation

Pursuant to FRAP 26.1 and Local Rule 26.1,

 Handi-foil Corporation
(name of party/amicus)

who is         appellant        , makes the following disclosure
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?
                                                          __ YES     X  NO

2.    Does party/amicus have any parent corporations?
                                                          __ YES     X  NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     __ YES    X  NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?        __ YES   X NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)
        __ YES   X NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?  __ YES   X NO
If yes, identify any trustee and the members of any creditors' committee:

Signature:  s/ David K. Callahan               Date:   November 12, 2014

Counsel for:  Handi-foil Corporation

## CERTIFICATE OF SERVICE
****************************

I certify that on  November 12, 2014   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Signature:  s/ David K. Callahan            Date:   November 12, 2014
         (signature)                            (date)

ii

# TABLE OF CONTENTS

**Page**

DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS ...............................................................................i

TABLE OF AUTHORITIES ..................................................................vi

INTRODUCTION ...................................................................................1

STATEMENT OF THE CASE ................................................................3

I.   BACKGROUND ...........................................................................3

    A.   The Parties ...........................................................................3

    B.   Handi-foil's Efforts in the Foil Wrap Market .......................4

II.  PROCEEDINGS BELOW ............................................................7

    A.   After Nearly a Year of Side-by-Side Sales, Reynolds Files Suit for Trade Dress Infringement .............................7

    B.   The District Court Grants Reynolds Partial Summary on Abandonment .................................................................9

    C.   The Jury Returns a Split Verdict .........................................11

    D.   The District Court Upholds the Verdict and Grants Reynolds a Permanent Injunction ......................................11

    E.   The District Court Adopts Reynolds' Proposed Injunction ...............14

SUMMARY OF ARGUMENT .............................................................15

ARGUMENT ........................................................................................17

I.   THE JURY'S CONFLICTING VERDICTS ARE FATALLY INCONSISTENT .........................................................................17

    A.   The Jury's Inconsistent Verdicts on the Trademark and Trade Dress Infringement Claims Are Irreconcilable ..................17

**Page**

*1.    Every Infringement Claim Turned on Likelihood of Confusion* ...................................................................18

*2.    Likelihood of Confusion for Every Claim Was Governed By the Same Legal Standard* ......................................20

*3.    The Likelihood of Confusion for Every Claim Was Based on the Same Proof* ..................................................23

B.    The Jury's Conflicting Verdicts on Federal Unregistered Trade Dress Infringement and State Unfair Competition Are Irreconcilable ..................................................................26

*1.    Virginia Unfair Competition Law Provides the Same Protection as Federal Unregistered Trade Dress Infringement* ...........................................................27

*2.    The Verdicts Cannot Be Reconciled on the Grounds That the Jurors Misunderstood the Instructions* ..............................27

II.    THE JURY'S VERDICT ON FEDERAL TRADE DRESS INFRINGEMENT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE .....................................................................31

A.    The Fact That No *Actual* Confusion Exists After Two Years of Significant Side-by-Side Sales Is Nearly Conclusive Evidence That Confusion Is Not *Likely* ...........................................33

B.    Important and Obvious Distinctions Between Handi-foil's and Reynolds' Packaging Weigh Strongly Against Likelihood of Confusion ..................................................................36

C.    The Remaining Extrinsic Factors Do Not Support the Jury's Likelihood of Confusion Finding .......................................39

*1.    The Strength of Reynolds' Mark Weighs Against Confusion* ..................................................................39

*2.    The Quality of Handi-foil's Products Does Not Support the Finding* ..................................................................40

iv

**Page**

3.    *Customer Sophistication Does Not Support the Finding*..........41

4.    *Similarity of Advertising Does Not Support the Finding*..........41

5.    *The Remaining Factors Do Not Demonstrate a Likelihood of Confusion*..........42

III.    THE PERMANENT INJUNCTION IS VASTLY OVERBROAD..............43

A.    An Injunction for Trade Dress Infringement Must Be Tailored to Prevent Consumer Confusion ........................................................44

B.    The Injunction Is, in Reality, a Series of Injunctions That Enjoins Far More Than Reasonably Necessary to Prevent Confusion ..........................................................................45

CONCLUSION ..................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AmBrit, Inc. v. Kraft, Inc.*,
812 F.2d 1531 (11th Cir. 1986) ....................................................45, 50

*American Casualty Co. of Reading, Pennsylvania v. B. Cianciolo, Inc.*,
987 F.2d 1302 (7th Cir. 1993) ........................................................32

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................35

*Anheuser-Busch, Inc. v. L & L Wings, Inc.*,
962 F.2d 316 (4th Cir. 1992) .............................................22, 39, 44

*Ashley Furniture Industies, Inc. v. SanGiacomo N.A. Ltd.*,
187 F.3d 363 (4th Cir. 1999) ...........................................................44

*Atlas Food Systems & Services, Inc. v. Crane National Vendors, Inc.*,
99 F.3d 587 (4th Cir. 1996) .............................................................18

*August Storck K.G. v. Nabisco, Inc.*,
59 F.3d 616 (7th Cir. 1995) ............................................................39

*Barnett v. Love*,
294 F.2d 585 (4th Cir. 1961) ..........................................................28

*Bose Corp. v. Linear Design Labs, Inc.*,
467 F.2d 304 (2d Cir. 1972) ...........................................................37

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
973 F.2d 1033 (2d Cir. 1992) .........................................................37

*CareFirst of Maryland, Inc. v. First Care, P.C.*,
434 F.3d 263 (4th Cir. 2006) ...................................................*passim*

*City of Richmond v. Madison Management Group, Inc.*,
918 F.2d 438 (4th Cir. 1990) .....................................................29, 30

*Coach, Inc. v. We Care Trading Co.*,
67 F. App'x 626 (2d Cir. 2002) .......................................................49

**Page(s)**

*Emergency One, Inc. v. Am. Fire Eagle Engine Co.*,
    332 F.3d 264 (4th Cir. 2003) .......................................................44, 49

*Essex v. Prince George's County Maryland*,
    17 F. App'x 107 (4th Cir. 2001) .......................................................17

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
    826 F.2d 837 (9th Cir. 1987) .............................................................44

*Gallick v. Baltimore & Ohio Railroad*,
    372 U.S. 108 (1963)..........................................................................17

*George & Co. LLC v. Imagination Entertainment Ltd.*,
    575 F.3d 383 (4th Cir. 2009) ......................................10, 22, 33, 37, 42

*Global Van Lines, Inc. v. Nebeker*,
    541 F.2d 865 (10th Cir. 1976) ...........................................................29

*Hartford House, Ltd. v. Hallmark Cards, Inc.*,
    846 F.2d 1268 (10th Cir. 1988) .........................................................45

*Hopkins v. Coen*,
    431 F.2d 1055 (6th Cir. 1970) ...........................................................29

*Kosmynka v. Polaris Industries, Inc.*,
    462 F.3d 74 (2d Cir. 2006) ................................................................29

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993) .........................................................37

*Lever Brothers Co. v. AmericanBakeries Co.*,
    693 F.2d 251 (2d Cir. 1982) ..............................................................33

*Litton Systems, Inc. v. Whirlpool Corp.*,
    728 F.2d 1423 (Fed. Cir. 1984) .........................................................37

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*,
    43 F.3d 922 (4th Cir. 1995) ...............................................................19

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
    464 F. Supp. 2d 495 (E.D. Va. 2006), *aff'd*, 507 F.3d 252 (2007)....................23

**Page(s)**

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
  507 F.3d 252 (4th Cir. 2007) .......................................15, 22, 23, 26, 40

*Malley-Duff & Associates, Inc. v. Crown Life Insurance Co.*,
  734 F.2d 133 (3d Cir. 1984) ...........................................................29

*Merchant & Evans, Inc. v. Roosevelt Building Products Co.*,
  963 F.2d 628 (3d Cir.), *abbrogated on other grounds by Two
  Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) ......................45

*Moss v. City of Colorado Springs*,
  871 F.2d 112 (10th Cir. 1989) .........................................................29

*Oreck Corp. v. U.S. Floor Systems, Inc.*,
  803 F.2d 166 (5th Cir. 1986) ..........................................................33

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
  317 F.3d 209 (2d Cir. 2003) ...........................................................45

*PBM Products, LLC v. Mead Johnson & Co.*,
  639 F.3d 111 (4th Cir. 2011) ..........................................................43

*Resorts of Pinehurst, Inc. v. Pinehurst National Corp.*,
  148 F.3d 417 (4th Cir. 1998) ..........................................................33

*Samara Brothers, Inc. v. Wal-Mart Stores, Inc.*,
  165 F.3d 120 (2d Cir. 1998), *rev'd on other grounds*, 529 U.S. 205
  (2000)......................................................................................50

*Sara Lee Corp. v. Kayser-Roth Corp.*,
  81 F.3d 455 (4th Cir. 1996) ................................................40, 41, 45

*Scotch Whisky Association v. Majestic Distilling Co.*,
  958 F.2d 594 (4th Cir. 1992) ..........................................................33

*Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*,
  710 F.2d 678 (11th Cir. 1983) ........................................................30

*Starter Corp. v. Converse, Inc.*,
  170 F.3d 286 (2d Cir. 1999) ...........................................................43

viii

**Page(s)**

*Swatch AG v. Beehive Wholesale, LLC*,
    739 F.3d 150 (4th Cir. 2014) ...................................................................*passim*

*Talkington v. Atria Reclamelucifers Fabrieken BV*,
    152 F.3d 254 (4th Cir. 1998) ...........................................................................18

*Timm v. Progressive Steel Treating, Inc.*,
    137 F.3d 1008 (7th Cir. 1998) .........................................................................32

*Tools USA & Equipment Co. v. Champ Frame Straightening
    Equipment Inc.*,
    87 F.3d 654 (4th Cir. 1996) .................................................................19, 21, 33

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992).........................................................................................44

*United States v. Chong Lam*,
    677 F.3d 190 (4th Cir. 2012) ...........................................................................22

*Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*,
    926 F.2d 1156 (Fed. Cir. 1991) .......................................................................10

*What-A-Burger of Virginia, Inc. v. Whataburger, Inc., of Corpus
    Christi, Tex.*,
    357 F.3d 441 (4th Cir. 2004) .....................................................................22, 36

*Will v. Comprehensive Accounting Corp.*,
    776 F.2d 665 (7th Cir. 1985) ...........................................................................17

*Wood v. Holiday Inns, Inc.*,
    508 F.2d 167 (5th Cir. 1975) ...........................................................................29

## STATUTES

15 U.S.C. § 1064.................................................................................................9

15 U.S.C. § 1065...............................................................................................19

15 U.S.C. § 1114.................................................................................................8

15 U.S.C. § 1125(a) .........................................................................................8, 9

**Page(s)**

15 U.S.C. § 1125(c) ................................................................................9

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1331 ....................................................................................1

28 U.S.C. § 1338 ....................................................................................1

28 U.S.C. § 1367 ....................................................................................1

Va. Code Ann. § 59.1-92.12 ..............................................................8, 19


**OTHER AUTHORITIES**

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:1 (4th ed.) ..............................................................43

Eric L. Muller, *The Hobgoblin of Little Minds? Our Foolish Law of Inconsistent Verdicts*, 111 Harv. L. Rev. 771 (1998) .........................31

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1338 over the federal trademark and trade dress claims, and supplemental jurisdiction under 28 U.S.C. § 1367 over the related state-law claims.  On July 18, 2014, the District Court entered final judgment on all claims and granted Reynolds a permanent injunction.  JA252 (Judgment); JA251 (Order).  On August 18, 2014, Handi-foil Corporation timely filed a Notice of Appeal of this judgment and order.  JA252a-c (Notice of Appeal of the Judgment and Order).  On October 1, 2014 the District Court entered its permanent injunction.  JA267-71.  On October 7, 2014, Handi-foil Corporation timely filed a Notice of Appeal of this injunction.  JA271a-c (Notice of Appeal of the Permanent Injunction).  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

I.   Whether the jury's conflicting verdicts on Reynolds' trade dress infringement claims are irreconcilably inconsistent.

II.  Whether the jury's sole verdict in favor of Reynolds, on federal unregistered trade dress infringement, is supported by substantial evidence.

III.  Whether the district court abused its discretion in setting the scope of the permanent injunction.

## INTRODUCTION

This trade dress infringement case concerns the packaging of competing aluminum foil wrap products. For nearly a year after Handi-foil launched its new packaging in discount retailer Dollar Tree—with Reynolds' full knowledge—Reynolds did nothing. It did not request that Handi-foil alter its packaging; it sent no cease-and-desist letter; it filed no suit. It stayed silent because, in the words of its chief marketing officer, Reynolds "had no plans of selling Reynolds Wrap at Dollar Tree in the near future, so having Handi-foil at Dollar Tree did not represent any threat to us." JA595 (Bryla Cross).

It was not Handi-foil's design, but its success in selling its product, that caused Reynolds to bring this suit. Despite the lack of even one instance of actual confusion caused by the sale of 30 million boxes using the accused designs, Reynolds asserted four different trade dress infringement counts on different state and federal legal theories, demanded damages for Handi-foil's sales, and sought an injunction preventing Handi-foil's continued use of the accused packaging.

After a four-day trial, the jury found in Handi-foil's favor on six of seven counts and in Reynolds' favor on one, on which it declined to award Reynolds any damages. Even though Reynolds had long argued that its multiple legal theories of harm were supported by an identical set of underlying facts, the jury entered

conflicting verdicts on the trade dress claims, finding for Handi-foil on three counts and for Reynolds on one.

The jury was almost entirely correct, rightly concluding on those three counts that Reynolds failed to prove that Handi-foil's packaging—which co-existed for two years in the marketplace and sold over 30 million units without a single reported incident of actual consumer confusion—is likely to cause any future consumer confusion. The jury's conflicting verdict on the one remaining trade dress count—which necessarily rested on an opposite finding—is inconsistent, unsupported by the evidence, and cannot stand.

## STATEMENT OF THE CASE

### I.    BACKGROUND

#### A.    The Parties

Founded in 1984 by Norton Sarnoff, Handi-foil Corporation is a family-owned business that has been selling aluminum foil products to grocery stores and the food service industry for 30 years. JA646-50 (Sarnoff Direct). The Sarnoff family has been in the aluminum foil market since the mid-1950s, when Norton started a company called E-Z Foil, selling aluminum foil containers to groceries. JA644. The family built the E-Z Foil brand up to approximately 90 percent of the foil container market before selling it in 1979 to a predecessor of Reynolds Consumer Products. JA645. Today, the Sarnoffs' brand is again atop the foil

container market, with a market share of approximately 70 percent.  *See* JA646,

JA653 (Sarnoff Direct); JA628 (Lane Deposition).

Reynolds Consumer Products has been in the aluminum foil market for more

than 50 years.  JA318 (Mickle Direct).  Reynolds made its name selling aluminum

foil wrap; as stated by its counsel, "Reynolds invented the category for aluminum

foil."  JA275 (Opening Argument).  It sells its foil wrap in a distinctive package

(shown below) that has been "essentially the same . . . going all the way back to

1958." *Id.*



*See* JA59.  Reynolds is the market leader in foil wrap, selling about 80 percent of

the foil wrap purchased in the United States every year.  *See* JA592 (Bryla Cross).

Until Handi-foil entered this market, Reynolds had *no* nationwide competitors.  *See*

JA337 (Mickle Cross).

## B.    Handi-foil's Efforts in the Foil Wrap Market

Handi-foil has always been a major player in foil containers, but did not

attempt to get into the retail aluminum foil business until the early-2000s.  JA651

(Sarnoff Direct).  It had branched out from the foil container market (and found

success) making and selling industrial aluminum foil rolls—500- and 1000-foot

rolls—to the food service industry.  *Id.*  The Sarnoffs tried their hand at selling

retail, private label, *i.e.*, store brand, foil wrap to groceries, but their efforts were not successful, and as its foil container business continued to grow, Handi-foil shifted its focus away from retail foil wrap.  JA652-53.

By the end of the decade, Handi-foil again considered a push in the retail foil wrap market.  JA653-54.  Its foil container business reached the 70 percent mark in market share around 2009, and the Sarnoffs were concerned that that business was nearing market saturation.  *See* JA653 ("we were running out of customers to pick up").  They looked back to the foil wrap market to maintain the company's overall growth, purchasing new state-of-the-art equipment and identifying a business plan for its renewed efforts.  JA653-54.

At the same time, discount retailer Dollar Tree was looking for a new foil wrap product for its shelves.  Reynolds had long supplied 25-foot rolls of its Reynolds Wrap to the retailer, but had begun downsizing the rolls—first to a 20-foot roll, then to a 18.75-foot roll—to maintain its profits at Dollar Tree's $1 price point.  JA568-69 (Bryla Direct).  Eventually, Reynolds offered Dollar Tree only its budget brand foil wrap.  JA569-70.  Dollar Tree was not happy with the changes and, around 2011, asked Handi-foil to supply an equivalent product (in 25-foot rolls) that would eventually replace Reynolds Wrap on its shelves.  *See* JA392-94 (Sarnoff Deposition).

Handi-foil obliged, designing a new box in cooperation with the store (the "Dollar Tree box") that launched in March 2012.



*See* JA63; *see also* JA654 (Sarnoff Direct); JA1054.  A Reynolds executive spotted the new box in Dollar Tree stores soon after sales began, JA593 (Bryla Cross), and samples of the Handi-foil's new box were circulated internally at Reynolds and among its legal counsel, JA571 (Bryla Direct); JA594 (Bryla Cross).  Although Reynolds aggressively protects its trademarked package design, *see* JA340 (Mickle Cross); JA600 (Bryla Cross), the company took no action in response to Handi-foil's new box, JA594 (Bryla Cross), noting that it "had no plans of selling Reynolds Wrap at Dollar Tree in the near future, so having Handi-foil at Dollar Tree did not represent any threat to us."  JA595.

Handi-foil's experience with Dollar Tree was a success, and it expanded its foil wrap line into traditional groceries nationwide.  JA654 (Sarnoff Direct); JA673-74 (Oesterreicher Direct).  Because it had given Dollar Tree exclusive rights to the Dollar Tree box, Handi-foil designed two new, similar boxes for retail sales in grocery stores.





*See* JA268; *see also* JA654 (Sarnoff Direct); JA886; JA1053. It sold its first

grocery store box in May 2012. JA673 (Oesterreicher Direct).

## II.    PROCEEDINGS BELOW

### A.    After Nearly a Year of Side-by-Side Sales, Reynolds Files Suit for Trade Dress Infringement

Reynolds did not claim infringement of its trade dress rights for ten months

after Handi-foil launched the accused boxes. As the companies' products were

sold side-by-side in Dollar Tree stores, JA702-03 (Kivetz Direct), and as Handi-

foil expanded into grocery stores, Reynolds remained silent. Only when it became

clear early in 2013 that Handi-foil posed a *commercial* threat to Reynolds'

dominance in the foil wrap market, did Reynolds act, bringing this suit. *See*

JA629-30 (Lane Deposition) ("We need to lock Handi-Foil out of consumer roll

foil. This is a battle we need to win.").

In its complaint, Reynolds alleged that it "own[ed] trade dress rights in its

REYNOLDS WRAP packaging design, which consists of the overall look, feel and

commercial impression of the combination of elements in a unique format that make up that design," under several different legal theories.  JA56.  "For example," it explained, "Reynolds owns incontestable federal trademark registrations for its REYNOLDS WRAP package designs," and it possessed "extensive common law trade dress rights in the overall look, feel and commercial impression of its REYNOLDS WRAP packaging design."  JA56-67.

Reynolds claimed that Handi-foil's use of similar designs for the Dollar Store box, the grocery boxes, a box Handi-foil had once shown at a trade show,



JA164, and a non-stick foil wrap box that Handi-foil never sold,



*see* JA268; JA1055-61, were "likely to cause confusion . . . as to the origin, sponsorship, or approval of [Handi-foil's] goods."  JA68.

Reynolds' trade dress infringement legal claims included two counts of registered trademark infringement under federal and Virginia law, 15 U.S.C. § 1114; Va. Code Ann. § 59.1-92.12 (Counts 1 and 5); one count of unregistered trade dress infringement under federal law, 15 U.S.C. § 1125(a) (Count 3), and one

count of unfair competition under Virginia common law (Count 6). JA75-76. In addition, Reynolds asserted claims of false designation of origin, 15 U.S.C. § 1125(a) (Count 2), trademark dilution, 15 U.S.C. § 1125(c) (Count 4), unjust enrichment (Count 7), and false advertising, 15 U.S.C. § 1125(a) (Count 8). JA75-78.[1]

Handi-foil denied the allegations, and raised counterclaims of abandonment of Reynolds' registered trademarks and declaratory judgment of non-infringement. JA82-152. In its abandonment counterclaim, Handi-foil asserted that Reynolds' registered trademarks in its package design should be cancelled because Reynolds' current product packaging was different from the designs depicted in its 1977 registrations, and Reynolds had no intention of resuming use of the registered designs. JA127-30; *see* 15 U.S.C. § 1064.

## B. The District Court Grants Reynolds Partial Summary on Abandonment

Reynolds moved for summary judgment on Handi-foil's abandonment claim. It acknowledged that its current packaging resulted from several "refreshe[s]" of the design described in its federal trademark registrations. JA141; *compare* JA1952 (registered design), *with* JA59 (current packaging), and did not claim that it intended to revert to its 1977 design. Reynolds argued that its

---

[1] Reynolds' false advertising claim was added six months after the case commenced, on the eve of the scheduled close of discovery. *Compare* JA38-53, *with* JA54-81.

9

registrations were nevertheless valid because, although not identical, its current packaging was legally and commercially indistinguishable from the registered marks. JA141. As Reynolds explained, "the uncontroverted evidence shows that consumers did not even recognize the change." JA143; *see also* JA146 ("the commercial impression from [Reynolds'] 1977 registration to its present packaging has been straight and continuous").

The district court agreed, even when considering the "high standard" of proof this Court requires to allow a company enjoy the benefit of a trademark registration it no longer uses. JA151-52 (citing *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383 (4th Cir. 2009)). The test for legal equivalency in this context, it recognized, "is more stringent than the 'confusingly similar' standard used to determine infringement," *id.* (quoting *George & Co.*, 575 F.3d at 402), and should be allowed only in "rare instances" when the marks in question "create 'the same, continuing commercial impression,'" JA152 (quoting *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1159 (Fed. Cir. 1991)). The court concluded that Reynolds met that high standard in this case as a matter of law, crediting Reynolds' proffered survey evidence that "'the vast majority of target buyers fail to [even] recognize that Reynolds packaging has been modified.'" JA154 n.5 (citation omitted). The court granted Reynolds' motion for summary judgment on the basis that no "reasonable juror" could find that Reynolds' packaging "as

currently used in commerce" and "its box as registered with the PTO" "fail to produce a continuing commercial impression."  JA152; JA154.

### C.     The Jury Returns a Split Verdict

The parties subsequently agreed to dismiss Reynolds' unjust enrichment claim and Handi-foil's declaratory judgment counterclaim.  *See* JA226. Two weeks before trial, Reynolds conceded that Hand-foil's trade show box was not likely to confuse consumers,



JA164, and provided Handi-foil a covenant not to sue, *see* JA161.  Reynolds' seven remaining claims proceeded to a jury trial.

After a four-day trial, the jury returned a split verdict.  JA165-73.  It found in favor of Handi-foil on six of Reynolds' seven claims but in favor of Reynolds on one of its four trade dress infringement claims—federal unregistered trade dress infringement (Count 3).  The jury found the infringement willful, but awarded Reynolds no damages.  JA171-72.

### D.     The District Court Upholds the Verdict and Grants Reynolds a Permanent Injunction

In post-trial briefing, Handi-foil requested judgment as a matter of law or, in the alternative, a new trial.  JA174.  It argued that no reasonable juror could have

11

found infringement based on the evidence at trial and that, in any event, the jury's verdict in Reynolds' favor on unregistered trade dress infringement under federal law (Count 3) was inconsistent with the jury's verdicts in Handi-foil's favor on registered trademark infringement under federal and Virginia law (Counts 1 and 5) and on unfair competition under Virginia law (Count 6). *Id.* Reynolds opposed the request, and moved for a permanent injunction. JA193.

Following argument, the district court upheld the verdict and granted Reynolds' request for a permanent injunction. JA250. The court held that substantial evidence supported the jury's verdict, reasoning that while there was conflicting evidence from the experts on actual confusion, Reynolds had provided sufficient evidence supporting all the other relevant likelihood of confusion factors, including the strength of Reynolds' trade dress, the similarity of the companies' packages, and others. JA231.

It also concluded that the jury's verdicts on the infringement counts were not irreconcilably inconsistent. Although it had previously ruled as a matter of law that the registered and commercial designs were *indistinguishable*, the court flip-flopped, holding that "the marks Reynolds has chosen to register are *different* than its unregistered trade dress." JA236-38 (emphasis added). The jury therefore "applied the likelihood of confusion test in the context of two different inquires: trademark and trade dress infringement." JA241. And it could have looked at

Handi-foil's packages and decided that they "did not infringe on 'certain elements' of Reynolds' trademark[s]," while deciding that the "overall impression of the two boxes" were sufficiently similar to infringe Reynolds' unregistered trade dress. JA240-41.[2]

The Court admitted that the conflicting verdicts on Reynolds' state-law unfair competition (Count 6) and federal unregistered trade dress infringement (Count 3) claims were "perhaps more difficult to square." JA242. It recognized that, as the jury was properly instructed, the two claims required the exact same proof, but reconciled the two verdicts by concluding that the jury must have misunderstood its instructions, and believed that "a finding of non-infringement on *any* of the Lanham Act claims required a finding of non-infringement on the unfair competition count." *Id.*

Finally, the district court concluded that entry of some form of injunction was appropriate. JA246-47. It "refrain[ed]," however, "from immediately specifying the scope of such an injunction." JA248. Instead, the court instructed the parties to work to "narrow" Reynolds' initially proposed injunction. JA753-54;

---

[2] The court defended its retreat from its summary judgment ruling by claiming that "the Court compared different items under a different standard than what the jury compared." JA243. "In its decision the Court compared the Reynolds' 2007 USPTO specimen with the Reynolds Wrap box as currently sold under the standard for 'tacking,' which is a question of law. At the close of trial, the jury was asked to make an entirely factual determination by comparing a variety of Handi-Foil boxes to other Reynolds Wrap boxes as well as Reynolds' registered marks." *Id.*

*see* JA194-202.  The district court emphasized that "[o]bviously, Reynolds is not entitled to strengthen their mark in an anticompetitive manner by the language in an injunction, so we need to be mindful of that."   JA755.   But rather than cautioning that it would properly restrict the injunction's scope if the parties did not, the court stated that should the parties fail to agree, it would simply "pick one [proposal] or the other."  JA756.

### E.     The District Court Adopts Reynolds' Proposed Injunction

Despite the court's instruction, Reynolds refused to tailor an injunction, proposing a similarly broad second draft.  *Compare* JA194-202, *with* JA257-61; *cf.* JA264-66.   The district court adopted it—as it had warned it would—without modification, analysis or opinion.  JA267-71.

In addition to enjoining Handi-foil from using the accused packages and confusingly similar packaging, that injunction included a series of separate, freestanding restrictions focused on several individual elements of Reynolds' asserted trade dress.  Handi-foil was enjoined, for example, from using a packaging design that includes a "tri-arch element" separating *any* two colors; a design that is 15% or more pink- or coral-colored, *e.g.*:



or *any* two-color design (with one color on the left and one on the right) that consists of 75% or more of over 100 different shades of blue.

This appeal followed.

## SUMMARY OF ARGUMENT

I.  The jury's conflicting verdicts on Reynolds' four trade dress infringement claims are fatally inconsistent.  At bottom, all four claims hinged on the same question: is the overall look of the accused Handi-foil boxes likely to be confused with Reynolds' current packaging as they are encountered in the marketplace.  *See CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006).  Regardless of the legal theory, this inquiry was governed by the same legal standard.  *See Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 262 (4th Cir. 2007).  And the jury was presented with the same proof for every claim.  Reynolds argued from the outset that the question for every count was "whether the overall or total image and appearance of [Handi-foil's] packaging is likely to be confused, infringes the overall total look and appearance of the iconic and famous Reynolds Wrap packaging design."  JA277 (Opening Argument).  And Reynolds' proofs met its arguments.  Neither its witnesses nor its counsel ever distinguished between the claims prior to the jury's verdicts.

Because they turned on the same question, same legal standard, and same proof, Reynolds' trade dress infringement claims rise and fall together.  Reynolds'

15

and the district court's *post hoc* efforts to reconcile the verdicts, relying on technical distinctions that do not affect the likelihood-of-confusion analysis—or, worse yet, on speculation about jury confusion—are unavailing. At minimum, Handi-foil is therefore entitled to a new trial.

II. A new trial is not necessary here, however, because substantial evidence does not support the jury's verdict on the sole count for which it found in Reynolds' favor—unregistered trade dress infringement. Based on the evidence presented at trial, no reasonable jury could find that Handi-foil's packaging was likely to cause confusion with Reynolds'. By the time of trial, Handi-foil and Reynolds Wrap had been sold side-by-side on the same shelves for two years, and Handi-foil had sold over 30 million of the accused boxes. But Reynolds could not identify a single instance of actual consumer confusion. And only a glance at the two boxes reveals why. Handi-foil's brand name is prominently displayed on all four faces of Handi-foil's boxes, along with an explicit statement that its product is *"[c]ompar[able]* to Reynolds Wrap." Even Reynolds' own long-time executive admitted that such a comparison only makes sense on a box that is not Reynolds Wrap. *See* JA335 (Mickle Cross). The Court should therefore set aside the jury's verdict for Reynolds on unregistered trade dress infringement.

III. At a minimum, the district court's overbroad injunction must be vacated, because it bears no reasonable relation to Reynolds' alleged harm.

Rather, the injunction (or, more accurately, series of injunctions) prohibits a multitude of box designs for which there is no possibility of confusion with Reynolds' trade dress. These component injunctions isolate elements of Reynolds' trade dress and cover them separately, without assessing whether a box using a single element would likely be confused with the *overall* look of the Reynolds box. The district court's failure to tailor its injunctive relief to prevent consumer confusion—in effect, expanding Reynolds' trade dress rights far beyond the overall look of its packaging—was an abuse of discretion. The Court, at the very least, should narrow the injunction to cover only foil box designs that are likely to confuse.

## ARGUMENT

## I.     THE JURY'S CONFLICTING VERDICTS ARE FATALLY INCONSISTENT

### A.     The Jury's Inconsistent Verdicts on the Trademark and Trade Dress Infringement Claims Are Irreconcilable

"As a rule civil juries must return consistent verdicts." *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 677 (7th Cir. 1985) (citing *Gallick v. Balt. & Ohio R.R.*, 372 U.S. 108, 119 (1963)). While the Seventh Amendment requires reviewing courts "to attempt to harmonize the [jury's] answers, if it is possible under a fair reading of them," *Gallick*, 372 U.S. at 119, where a court cannot do so "without speculating," "the proper remedy for an inconsistent verdict is a new trial," *Essex v. Prince George's Cnty. Md.*, 17 F.

App'x 107, 117 (4th Cir. 2001) (quoting *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 598 (4th Cir. 1996)); *see also Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254, 261 (4th Cir. 1998).

In this case, the jury's verdicts in Handi-foil's favor on the registered trademark infringement claims (Counts 1 and 5) and state-law unfair competition claim (Count 6) cannot be squared with its verdict in Reynolds' favor on the unregistered trade dress infringement claim (Count 3). All four turned on the same likelihood-of-confusion question, which was governed by the same legal standard for each claim and supported by the same proof. Any rational jury must have answered the question the same way for each claim. The district court erred by not ordering a new trial to resolve the inconsistency.

### 1. *Every Infringement Claim Turned on Likelihood of Confusion*

All four of Reynolds' trade dress infringement claims turned on whether Handi-foil's packages were likely to confuse consumers as to the origin, sponsorship, or affiliation of Handi-foil's foil wrap products.

To conclude that Handi-foil had infringed Reynolds' unregistered trade dress under federal law (Count 3), the jury was required to find that: "(1) [Reynolds'] trade dress is primarily non-functional; (2) the trade dress is inherently distinctive or has acquired a secondary meaning; *and* (3) the alleged infringement creates a

*likelihood of confusion*." *Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.*, 87 F.3d 654, 657 (4th Cir. 1996) (emphasis added).

Yet, at the same time, to find that Handi-foil did *not* infringe Reynolds' federally registered trademarks in the same package design (Count 1), the jury had to conclude either that (1) Reynolds did not have valid, protectable trademarks, or (2) Handi-foil's use of "a colorable imitation" of the trademarked designs was not "*likely to cause confusion* among consumers." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995) (emphasis added); *see* JA179. And the only disputed element was likelihood of confusion.[3]

Similarly, to find that Handi-foil had not infringed Reynolds' registered trademarks under Virginia law (Count 5), the jury had to conclude that Handi-foil did not "use[] in a manner *likely to cause a consumer confusion* . . . as to the source or origin of any goods . . . any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of such goods or services." Va. Code Ann. § 59.1-92.12 (emphasis added). As with the corresponding federal claim, the only disputed element of that test at trial was likelihood of confusion. Indeed, for this

---

[3] By virtue of more than five years of continuous use, Reynolds' trademarks themselves provided "conclusive evidence" that the company had valid, protectable marks. JA182; *see* 15 U.S.C. § 1065.

claim, the jury was instructed simply that "Virginia state law requires a finding of likelihood of confusion to prove trademark infringement." JA190.

Lastly, to find that Handi-foil had not committed unfair competition under Virginia law (Count 6), the jury had to conclude the exact opposite of what it found for the unregistered trade dress claim. *See Lone Star Steakhouse*, 43 F.3d at 930 n.10 (noting that the claims are "essentially the same . . . because both address the likelihood of confusion as to the source of the goods or services involved"). Indeed, the court specifically instructed the jury on this issue, noting that "Virginia common law unfair competition claim requires *the same proof*, including likelihood of confusion, as the Lanham Act offenses." JA191 (emphasis added); *accord Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014).

> 2. *Likelihood of Confusion for Every Claim Was Governed By the Same Legal Standard*

Each infringement claim depended on the same likelihood of confusion element, and the same legal standard governed the analysis of each claim. Likelihood of confusion exists where "the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006). Nine factors guide the inquiry:

> "(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used

20

> by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public."

*Swatch AG*, 739 F.3d at 158 (citation omitted). The same factors apply to unregistered trade dress claims as to registered trademark claims. *See Tools USA*, 87 F.3d at 661. And the same is true with respect to the state law claims. *See Swatch AG*, 739 F.3d at 162.

The application of those factors do not depend on the particular legal theory of recovery. That is evident on the face of most of them. Similarity of the goods, quality of the products, similarity of the facilities used, and similarity of advertising obviously do not depend on the underlying legal theory or even the asserted marks. As for the factors that might conceivably vary based on the precise legal rights asserted, *e.g.*, the strength of the asserted mark or the similarity the parties' marks, this Court has made clear that those factors are focused on marketplace realities—not technical distinctions based on the source of the plaintiff's rights. The strength of the asserted mark, for example, is evaluated "*as actually used in the marketplace*." *Id.* at 158 (emphasis added). And similarity of the marks is judged as they appear "*to consumers*." *Id.* (emphasis added).

In evaluating all of these factors, this Court has repeatedly explained that the proper analysis "look[s] to how the two parties actually use their marks in the marketplace to determine whether the defendant's use is likely to cause

21

confusion." *CareFirst*, 434 F.3d at 267; *see George & Co.*, 575 F.3d at 393 (same); *What-A-Burger of Va., Inc. v. Whataburger, Inc., of Corpus Christi, Tex.*, 357 F.3d 441, 450 (4th Cir. 2004) ("a court should consider a number of factors relating to the way in which the competing marks operate in the workplace"); *Anheuser-Busch*, *Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 319 (4th Cir. 1992) ("we must examine the allegedly infringing use in the context in which it is seen by the ordinary consumer"); *United States v. Chong Lam*, 677 F.3d 190, 211 n.2 (4th Cir. 2012) (Floyd, J., dissenting) ("Likelihood of confusion is properly adjudged from the perspective of the average purchaser based on the conditions encountered in the marketplace . . . ."). Thus, where different legal claims are based on the same marketplace conditions, the likelihood-of-confusion test is the same.

This Court's analysis in *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007), is instructive. In that case, Louis Vuitton claimed, as Reynolds does here, that the defendant infringed its trade dress rights under several different theories, including registered trademark infringement under federal and Virginia law, unregistered trade dress infringement under federal law, and unfair competition under Virginia law. *Id.* at 258. As here, the only disputed issue was whether the defendants' products were likely to cause consumer confusion. *Id.* at 269. On cross motions for summary judgment, the district court entered judgment for the defendant after concluding that "no reasonable trier of

fact would conclude that likelihood of confusion exists between Plaintiff's and Defendants' products." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 464 F. Supp. 2d 495, 503 (E.D. Va. 2006), *aff'd*, 507 F.3d 252 (2007).

Louis Vuitton appealed, faulting the district court for conducting only one likelihood-of-confusion analysis, and not individually addressing each theory and claim. *Louis Vuitton*, 507 F.3d at 269. This Court disagreed, holding that the district court's decision not to address every claim "reflect[ed] economy rather than error." *Id.* Louis Vuitton's registered trademark, unregistered trade dress, and corresponding Virginia claims were all based "on essentially the same facts." *Id.* And thus the "issues rise or fall together" and the district court's conclusion "that no confusion is likely to result with regard to [Louis Vuitton's] trademarks [wa]s sufficient also to dispose of [Louis Vuitton's] trade dress claims as well." *Id.*

>    3.    *The Likelihood of Confusion for Every Claim Was Based on the Same Proof*

Because the identical legal standard governed these claims, Reynolds' proof on likelihood of confusion was identical for each.

The district court made clear that Reynolds rights were unitary, not distinct, in its pre-trial decision granting Reynolds' summary judgment on Handi-foil's abandonment claim. There, at Reynolds' urging, the court held as a matter of law that Reynolds' current package design (*i.e.*, its unregistered trade dress) was indistinguishable from its registered trademarks, even when applying a "more

23

stringent" standard than the likelihood-of-confusion test. *See* JA152; JA154. And it accepted Reynolds' argument and evidence that "'the vast majority of target buyers fail to recognize that Reynolds packaging ha[d] been modified'" from its registered design. JA154 n.5 (citation omitted).

Reynolds ran with this argument at trial, arguing from the outset that the only question for every infringement count was "whether the overall or total image and appearance of [Handi-foil's] packaging is likely to be confused, infringes the overall total look and appearance of the iconic and famous Reynolds Wrap packaging design." JA277 (Opening Argument); *see also* JA278 ("The evidence will show that the overall or total image or appearance of the newly packaged Handi-foil product is infringing on the registered *and* common law trademark rights of Reynolds." (emphasis added)).

Reynolds' proofs met its arguments; its witnesses did not distinguish between Reynolds' registered marks and its unregistered trade dress. *See, e.g.*, JA312 (Mickle Direct). Its survey evidence did not distinguish between them. *See* JA510 (Butler Cross); JA507. And its counsel never made any distinction.

Instead, Reynolds repeatedly argued to the jury and to the court that likelihood of confusion in this case *for every infringement claim* turned on the "total image and appearance" of the competing boxes. JA616 (Argument on Directed Verdict); *see, e.g.*, JA281 (Opening Argument) ("Handi-foil will try to

24

dissect, but the issue here is total image and appearance."); JA310 (Mickle Direct)

("[W]e're focusing in this case on overall look and feel . . . ."); JA724 (Closing

Arguments) ("*[T]he* issue is the . . . total image and overall appearance. That is

what the question is in terms of similarity and likelihood of confusion." (emphasis

added)); JA730 ("This is a trade dress infringement case. And *the* issue is whether

the overall look and feel likely to be confused with the overall look and feel of

what counsel acknowledged was a strong brand." (emphasis added)); JA731 ("So

that takes care of *the* likelihood of confusion claim." (emphasis added)).[4]

* * *

Thus, contrary to district court's *post hoc* rationalization, the jury was not

asked in this case to make two separate inquiries—"(1) for the purposes of

trademark infringement, are the Handi-foil boxes likely to cause confusion with the

'*certain elements*' making up Reynolds' *registered marks*; and (2) for the purposes

of trade dress infringement, are the Handi-foil boxes likely to cause confusion with

'*the total image and overall appearance*' of the Reynolds Wrap *boxes*." JA239.

Rather, in accordance with this Circuit's precedent, the jury was instructed—for

every infringement count in one shared instruction—to determine whether "Handi-

---

[4] While placing more emphasis on the differences between particular elements of
Reynolds' and Handi-foil's packaging, Handi-foil's counsel also operated on the
legally correct assumption that the infringement claims would "rise and fall
together." JA613-14; *see also* JA727 (Closing Arguments) ("Let's talk about trade
dress. The same thing.").

Foil used the package[] designs for the Handi-Foil brand products in a manner that is likely to cause confusion as to the source, origin, sponsorship, or approval of Handi-foil's products," JA189, applying the same likelihood-of-confusion factors to the very same proof.

There can be no dispute that every infringement count concerned the same Handi-foil and Reynolds packages encountered by same consumers in the same marketplace—*i.e.*, concerned "essentially the same facts." *Louis Vuitton*, 507 F.3d at 269. And whatever the alleged nuances of the various legal theories, the question for each was whether Handi-foil's packaging is likely to cause consumers to confuse Handi-foil's product with Reynolds' in the context in which they are seen by the ordinary consumer. Same question, same standard, same proof—different answers. Under the facts of this case, the claims should have "rise[n] or fall[en] together." *Id.* The fact that they did not requires a new trial.

**B.    The Jury's Conflicting Verdicts on Federal Unregistered Trade Dress Infringement and State Unfair Competition Are Irreconcilable**

Even if the jury's verdicts on the registered trademark claims and unregistered trade dress claims could be reconciled, the conflicting verdicts in favor of Reynolds for unregistered trade dress infringement (Count 3) and in favor in Handi-foil for unfair competition under Virginia law (Count 6) cannot.

26

1.    *Virginia Unfair Competition Law Provides the Same Protection as Federal Unregistered Trade Dress Infringement*

As described above, unfair competition under Virginia common law requires exactly the same proof as unregistered trade dress infringement—also known as unfair competition—under federal law.  *See Swatch AG*, 739 F.3d at 162 ("Virginia common law trademark infringement and unfair competition claims require the same proof, including a likelihood of confusion, as the Lanham Act offenses."). And the jury was so instructed.  *See* JA191 ("Virginia common law unfair competition claim requires the same proof, including likelihood of confusion, as the Lanham Act offenses.").  A finding of liability on one necessarily required a finding of liability on the other, and vice versa.  *See Swatch AG*, 739 F.3d at 162.

2.    *The Verdicts Cannot Be Reconciled on the Grounds That the Jurors Misunderstood the Instructions*

The only explanation the district court offered on this inconsistency was that the jury must have misunderstood its instructions:  "Reasonable jurors could look at this instruction and determine that a finding of non-infringement on *any* of the Lanham Act claims required a finding in Handi-Foil's favor on the unfair competition count."  JA242.[5]  But this reasoning was erroneous on two grounds.

---

[5] Reynolds argued that the jury must have misunderstood the instruction in a *different* way, suggesting it "reasonably understood that the Virginia common law unfair competition claim required the same elements as the federal false advertising claim," because the jury instruction for false advertising count indicated it was a Lanham Act offense.  JA209; *see* JA192.  The district court

First, the district court's reasoning fails to reconcile the inconsistency. As described above, all of Reynolds' trademark and trade dress claims turned on the same question—whether Reynolds had proven a likelihood of confusion between Handi-foil's and Reynolds' foil wrap packages. All reasonable jurors must have understood the jury instruction in that light. In other words, because no reasonable jury could reach inconsistent verdicts on any of the trade dress infringement claims, the court cannot reconcile the inconsistency between the unregistered trade dress claim and the Virginia claim on that basis.

More fundamentally, however, it was improper for the district court to reconcile the admittedly inconsistent verdicts by speculating that jurors must have misunderstood them. Rather than providing a basis for upholding a verdict, this Court has long recognized that jury statements that indicate a "misunderstanding and confusion on the part of the jurors" warrant a new trial. *See Barnett v. Love*, 294 F.2d 585, 587 (4th Cir. 1961). Inconsistent verdicts that demonstrate such confusion are no different.

---

rightly rejected that argument. It was no secret to the jury that the trade dress infringement claim was a Lanham Act offense. *See, e.g.*, JA484 (Butler Direct). And the jury was instructed that "Virginia common law unfair competition claim requires the same proof, *including likelihood of confusion*, as the Lanham Act offenses." JA191 (emphasis added). Reynolds would have the jury ignore that trade dress infringement actually required proof of a "likelihood of confusion," while the false advertising claim did not. *Compare* JA179, JA180, *and* JA189, *with* JA192.

To the contrary, "inconsistencies which show jury confusion serve to mandate a new trial." *Global Van Lines, Inc. v. Nebeker*, 541 F.2d 865, 868 (10th Cir. 1976); *see Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 87 (2d Cir. 2006) (concluding that jury either "ignored or misunderstood" the court's instruction, leading to inconsistent verdicts requiring a new trial); *Moss v. City of Colo. Springs*, 871 F.2d 112, 115 (10th Cir. 1989) (remanding for new trial despite "the strong possibility that the inconsistencies in the verdicts returned by the jury were the result of confusion among the jurors over the instructions delivered by the trial court"); *Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*, 734 F.2d 133, 146 (3d Cir. 1984) (remanding for new trial; inconsistent verdicts caused by ambiguous instructions that "led to jury confusion"); *Wood v. Holiday Inns, Inc.*, 508 F.2d 167, 175 (5th Cir. 1975) ("Where verdicts in the same case are inconsistent on their faces indicating that the jury was confused, a new trial is certainly appropriate and may even be required."); *Hopkins v. Coen*, 431 F.2d 1055, 1059 (6th Cir. 1970) ("where verdicts in the same case are inconsistent on their faces, indicating that the jury was either in a state of confusion or abused its power, a motion to alter or amend a judgment, for new trial, or for relief from the judgment, if timely made, is not discretionary").

The district court relied on this Court's decision in *City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438 (4th Cir. 1990), for the

proposition that "'a jury verdict inconsistent on its face does not require a new trial if the inconsistency may reasonably be attributed to the jury's misunderstanding of the jury instructions.'"  JA242 (quoting *Richmond*, 918 F.2d at 458).  But the Court's discussion of inconsistent verdicts in that case does not warrant ignoring the weight of authority in other Circuits.  Although the statement in *Richmond* was more than a passing remark, the discussion of jury confusion was in fact *dicta*.  While the Court declined to find the verdicts irreconcilable on the basis of jury confusion, *Richmond*, 918 F.2d at 458, it ordered a new trial on another basis, *id.* at 461-62.

Moreover, there is good reason not to adopt the *Richmond dicta*; the sole authority cited in support of it was a footnote from an Eleventh Circuit case in which the court did precisely the opposite.  In *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678 (11th Cir. 1983), the court noted that the verdict forms may have confused the jury about the "technical niceties" of *completing the forms*, but there was no confusion about the jury's assigned role or facts it was supposed to find.  *Id.* at 684-85.  It is one thing to say, as the court did in *Silverberg*, that where a jury understood the facts it was required to determine and, despite technical problems on the verdict form, its determination of those facts is "manifest," the law requires enforcing the jury's "unmistakable intent."  *Id.* at 685.  It is quite another to reason, as the district court did here, that the Seventh

30

Amendment requires irreconcilable verdicts to be upheld even where the jury *mis*understand its core fact-finding mission.

Courts have a duty to reconcile inconsistent verdicts where they reasonably can out of respect for the jury's Seventh Amendment role to determine facts. But upholding a jury verdict that is based on confusion or mistake does not protect that role; indeed, the jury in such a case has been deprived of the opportunity to find the relevant facts, the parties' of their right to have a jury decide such facts, and the defendant of the "bedrock principle" of due process that abhors the arbitrary deprivation of life, liberty, or property. *See* Eric L. Muller, *The Hobgoblin of Little Minds? Our Foolish Law of Inconsistent Verdicts*, 111 Harv. L. Rev. 771, 801 (1998). The Seventh Amendment does not require such a perverse result, and this Court should decline to rule that it does.

## II. THE JURY'S VERDICT ON FEDERAL TRADE DRESS INFRINGEMENT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Because the jury's verdict on unregistered trade dress infringement cannot be reconciled with its three verdicts in Handi-foil's favor on every other count requiring that Reynolds prove likelihood of confusion, this Court should at least vacate the judgment and order a new trial. But this Court need not waste those judicial, public, and private resources in this case. Although the ordinary remedy

31

for inconsistent verdicts is a new trial,[6] where one of the conflicting verdicts is unsupported by the evidence, "[a] judge may dissipate the inconsistency by setting [it] aside." *Am. Cas. Co. of Reading, Pa. v. B. Cianciolo, Inc.*, 987 F.2d 1302, 1305 (7th Cir. 1993). Because there is no substantial evidence supporting the jury's finding that Handi-foil's packaging creates a likelihood of confusion with Reynolds' unregistered trade dress, this Court should set aside the verdict on Count 3, and affirm the remainder of the judgment.

As described above, likelihood of confusion exists if "the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *CareFirst*, 434 F.3d at 267. This Court has identified nine "non-exclusive and non-mandatory factors" to guide the consideration of whether such a likelihood exists, but those factors are not meant to provide a "rigid formula." *Swatch AG*, 739 F.3d at 158. They are "not all of equal importance and not all factors are relevant in every case." *Id.* at 159. Looking to the relevant factors here, no reasonable juror could conclude that Handi-foil's packaging is likely to cause confusion as to the origin of its goods.

---

[6] *See Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998) ("there is no priority among inconsistent verdicts").

### A. The Fact That No *Actual* Confusion Exists After Two Years of Significant Side-by-Side Sales Is Nearly Conclusive Evidence That Confusion Is Not *Likely*

In determining whether ordinary customers are *likely* to be confused by a defendant's packaging, this Court has sensibly placed an emphasis on whether anyone has *actually* been confused. *See, e.g.*, *Swatch AG*, 739 F.3d at 162 (actual confusion is "generally considered to be the most important factor in a likelihood of confusion analysis" (citation omitted)); *George & Co.*, 575 F.3d at 398 ("The seventh and most important factor is actual confusion."); *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 423 (4th Cir. 1998) ("the best evidence of likely confusion is actual confusion"); *Tools USA*, 87 F.3d at 660-61 ("evidence of actual customer confusion 'is patently the best evidence of likelihood of confusion'" (citation omitted)).

"The absence of any evidence of actual confusion over a substantial period of time . . . creates a strong inference that there is no likelihood of confusion." *CareFirst*, 434 F.3d at 269; *see Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 598 (4th Cir. 1992); *Oreck Corp. v. U.S. Floor Sys., Inc.,* 803 F.2d 166, 173 (5th Cir. 1986) ("In light of the concurrent use of the [marks] for seventeen months, Oreck's inability to point to a single incident of actual confusion is highly significant."); *Lever Bros. Co. v. Am. Bakeries Co.*, 693 F.2d 251, 258 (2d Cir. 1982) (inferring no likelihood of confusion from "a history of combined sales of

33

approximately sixty-three million food items during three years had not yielded even one documented instance of actual confusion").

Such an absence of actual evidence is all the more probative in today's hyper-connected world. As Reynolds' chief of marketing David Bryla explained, "when there's a negative experience, and consumers have negative experiences all the time, nowadays they write about it . . . on Web sites . . . and they tell a couple thousand friends and a couple thousand readers." JA557 (Bryla Direct). This applies to Reynolds Wrap, just like it does every other consumer product. *See* JA343-44 (Mickle Cross) (describing Reynolds' "sophisticated system" for tracking consumer questions, comments, and complaints); JA548 (Bryla Direct) (touting Reynolds' half-million Facebook fans).

And yet Reynolds was unable to identify even one instance of actual confusion in the real world. Despite the fact that by the time of trial, the companies' products had been sold side-by-side in stores for two years, JA702-03 (Kivetz Direct), and that consumers had purchased more than 30 million allegedly confusing boxes of Handi-foil's foil wrap, JA691 (Perkins Direct), Reynolds could not find a single filed complaint, a solitary mention on a blog, or even a lonely Facebook post from one of Reynolds' half-million fans. *See* JA590 (Bryla Cross); JA345 (Mickle Redirect); JA633-34 (Lane Deposition).

34

Reynolds' defective survey cannot remedy the absence of actual confusion. As an initial matter, Reynolds' survey tested only one of the four boxes the jury found to infringe Reynolds' trade dress—and thus it provides *no* evidence (circumstantial or otherwise) of actual confusion for the three remaining boxes. *See* JA514 (Butler Cross). Although she claimed to believe that her results would be the same, JA518, Reynolds' expert was unaware that those other boxes included an explicit disclaimer that Handi-foil's product was "neither manufactured nor made under the authorization of Reynolds Consumer Products Company," JA512-13.

Moreover, even with respect to the Dollar Tree box that was used, the survey was so fundamentally flawed it could not possibly overcome the strong inference that the absence of documented confusion creates. As Handi-foil's expert explained, Butler's survey tested the wrong population, JA704-06 (Kivetz Cross), using a faulty control package, JA707-09, and leading questions, JA709-12. *See generally* JA2020-2305; *see also CareFirst*, 434 F.3d at 268-69 (disregarding, on summary judgment, the results of the plaintiff's survey because it "ha[d] little probative value"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (the summary judgment standard "mirrors the standard for a directed verdict").

35

## B.     Important and Obvious Distinctions Between Handi-foil's and Reynolds' Packaging Weigh Strongly Against Likelihood of Confusion

The lack of evidence of actual confusion is unsurprising when one looks to the design of the packages themselves.  At trial, Reynolds understandably focused on the similarities between the companies' designs—all of them feature some shade of blue and some shade of red/coral/pink; all of them indicate the brand name in a bold font and the length of the roll on right; and all indicate where to "lift" to open the box.  JA625-26 (Lane Deposition).  But "[m]ere use of a mark that is similar . . . does not *a fortiori* establish infringement."  *What-A-Burger*, 357 F.3d at 450.   The question is whether the designs are "*confusingly* similar." *Swatch AG*, 739 F.3d at 160 (emphasis added).  And as Reynolds' chief marketing officer Bryla himself recognized, key distinctions between Handi-foil's and Reynold's designs enable anyone who looks at a Handi-foil box to immediately distinguish it from Reynolds' product—"even a two- to three-second look at the box tells you who makes it."  JA591 (Bryla Cross).[7]

---

[7] Even the basic elements Reynolds highlights are not identical—they use different shades of blue and different shades of red (Reynolds' design is actually pink); Handi-foil does not use Reynolds' distinctive silver "tri-arch" to separate those colors; and the companies use different fonts.  *See generally* JA331-33 (Mickle Cross).



*See* JA63.



*See* JA59.

First and foremost, Handi-foil's brand name is the most dominant aspect of the design of every Handi-foil box. *George & Co.*, 575 F.3d at 396 ("In assessing the similarity of the marks under the second Pizzeria Uno factor, we focus on the dominant portions of the parties' marks."). "[T]he most common and effective means of apprising intending purchasers of the source of goods is a prominent disclosure on the container, package, wrapper, or label of the manufacturer's or trader's name." *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1446 (Fed. Cir. 1984). As other courts have recognized, "there is hardly likelihood of confusion or palming off when the name of the manufacturer is clearly displayed." *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 310 (2d Cir. 1972); *see, e.g.*, *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1134 (Fed. Cir. 1993) ("conspicuous and permanent placement of the trademarks" on the plaintiff and alleged infringing products outweighed the similarities in the shoe design); *Bristol-*

*Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1045-46 (2d Cir. 1992) (reversing a finding of similarity as clearly erroneous because "the prominence of the trade names on the two packages weighs heavily against a finding of consumer confusion resulting from the overall look of the packaging"). That is precisely what Handi-foil did, prominently placing the "Handi-foil" name on all four faces of the boxes at issue.

Second, any lingering doubt by an ordinary consumer as to origin or affiliation of Handi-foil's boxes would be removed by Handi-foil's use of the well-known convention of comparing one's product to the leading national brand. On the front of every box, Handi-foil explicitly asks the consumer to "Compare to Reynolds Wrap Foil." JA63. At trial, Reynolds made much of the fact that Handi-foil boxes actually referred to Reynolds Wrap by name, claiming that the reference was an independent violation of the Lanham Act—a false designation of origin. *See, e.g.*, JA282 (Opening Argument) ("Handi-foil had suggested to Dollar Tree that the legend under the box say 'compared to Reynolds Wrap.' This is a further act of infringement."). The jury rejected that claim because nothing could be further from the truth. JA168.

Such a common use of a competitor's trade name "is not just permissible in the sense that one firm is entitled to do everything within legal bounds to undermine a rival; it is *beneficial to consumers*. They learn at a glance what kind

of product is for sale and how it differs [or not] from a known benchmark." *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 618 (7th Cir. 1995) (emphasis added). As for confusion, "the [aluminum-foil-using] public will quickly grasp that the point of the . . . stripe containing the [Reynolds] name is to *distinguish* the two [products]." *Id.*

Reynolds knows this fact well; its former director of advertising and marketing conceding that "the only thing that it makes sense to put 'compare to Reynolds Wrap' on is something that *isn't* Reynolds Wrap." JA335 (Mickle Cross) (emphasis added). Any other use of the phrase "would be silly." *Id.*

### C.    The Remaining Extrinsic Factors Do Not Support the Jury's Likelihood of Confusion Finding

In light of the lack of actual confusion and key differences in the companies' trade dress, no reasonable juror could find that the remaining factors establish a likelihood of confusion. This Court has recognized such "extrinsic factors" are "insufficient by themselves to establish likelihood of confusion absent some threshold of intrinsic similarity between the plaintiff's trademark and the defendant's alleged infringement." *Anheuser-Busch, Inc.* 962 F.2d at 320. And they do not provide meaningful support for Reynolds' claim in any event.

#### 1.    *The Strength of Reynolds' Mark Weighs Against Confusion*

Handi-foil does not dispute Reynolds' proofs that it has a very strong brand. *See* JA1013-16 (Harris Interactive EquiTrend Poll '06) ("Reynolds Wrap

Aluminum Foil Ranks No. 1 in Overall Brand Equity"); JA1010-12 (Harris Interactive EquiTrend Poll '05) (same); JA1004-09 (Harris Interactive EquiTrend Poll '04) (same).  Stronger than Ziploc, Hershey's, Kleenex, and Oreo.  JA1004-05.

"Finding a mark to be strong and famous usually favors the plaintiff in a trademark infringement case."  *Louis Vuitton*, 507 F.3d at 261.  But, in some cases, strength of the plaintiff's mark can point the other way.  *See, e.g.*, *id.*  This is such a case.  The overwhelming strength of the Reynolds' brand only makes the differences between the companies' packages *more* recognizable.  *Cf. id.* ("It is a matter of common sense that the strength of a famous mark allows consumers . . . to recognize the changes to the mark.").  It makes the prominence of Handi-foil's name on Handi-foil's box an immediate cue to consumers that this box is *not* a Reynolds brand product.  And it makes the comparison to Reynolds Wrap on the front (and the disclaimer on the back) crystal clear.

### 2. *The Quality of Handi-foil's Products Does Not Support the Finding*

The quality of the defendants' product is relevant to the likelihood of confusion only where there is evidence that the alleged infringer's product is "markedly inferior" to the plaintiff's.  *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 467 (4th Cir. 1996).  But in rejecting Reynolds' false advertising claim,

the jury made clear that Handi-foil's aluminum foil was "compar[able] to Reynolds Wrap Foil," exactly as advertised.  JA63 (capitalization altered); *see* JA168.

### 3.     *Customer Sophistication Does Not Support the Finding*

Customer sophistication is similarly irrelevant where the relevant market is "the public at-large." *Sara Lee*, 81 F.3d at 467.  It is hard to imagine a product that is more geared to the general public than aluminum foil.  As Bryla explained, "over 90 percent of [U.S.] households have foil in them right now.  Now, everybody uses foil." JA547 (Bryla Direct).  Even "ET used Reynolds Wrap to phone home." JA306 (Mickle Direct).

### 4.     *Similarity of Advertising Does Not Support the Finding*

Nor does any similarity of advertising help Reynolds' claim.  It is undisputed that Handi-foil has not engaged in any substantial advertising of its foil roll products since it renewed its focus on the category in recent years.  JA660 (Sarnoff Cross) ("[W]e've been in this business for less than two years, so eventually at some point, we will look into doing some form of advertising. . . . Most of our expenses these days are spent towards legal due to this situation.").  The district court recognized that fact, but counted this factor in Reynolds' favor because "almost the entirety of the marketing pitch for the Handi-Foil roll foil centered on the product being 'comparable to Reynolds Wrap.'" JA231 n.7.  Even if that counts as advertising, the jury's rejection of Reynolds' false designation of

origin claim (Count 2)— premised on the "Compare to Reynolds Wrap" language on Handi-foil's box—demonstrates that the statement distinguishes Handi-foil's products, not creates confusion.

> 5.    *The Remaining Factors Do Not Demonstrate a Likelihood of Confusion*

That leaves only the similarity of the companies' goods, similarities of their facilities, and defendant's intent.  While Handi-foil's and Reynolds' trade dress identify the similar goods and are sold in similar retail facilities, these factors alone obviously cannot justify a finding of likelihood of confusion.  The market is littered with other brands of aluminum foil, many of which are sold in packaging bearing some resemblance to Reynolds' Wrap.  *See* JA1973-2013.  If anything, these factors make the absence of any instances of actual confusion all the more stark.

Finally, Reynolds spent much of trial trying to convince the jury that Handi-foil copied certain aspects of Reynolds' designs.  But the question on this factor is whether the defendant "'inten[ded] to confuse the buying public'" or "infringe on [the plaintiff's] trademark."  *George & Co.*, 575 F.3d at 397 (citation omitted).  None of Reynolds' evidence demonstrates such an intent—and Handi-foil's prominent use of its own mark and explicit *comparison* to Reynolds' product belies any such claim.

In the end, this Court's legal tests confirm what even a quick glance at Handi-foil's accused designs demonstrates. The jury was right three times out of four—substantial evidence does not support a finding that ordinary consumers are likely to be confused about the origin, affiliation, or sponsorship of Handi-foil brand aluminum foil wrap. The jury's verdict on Count 3 should be set aside on that basis.

## III.   THE PERMANENT INJUNCTION IS VASTLY OVERBROAD

Finally, at a minimum, this Court should vacate the district court's permanent injunction as vastly overbroad. To be clear, if the Court upholds the verdict, Handi-foil does not independently challenge the district court's entry of a permanent injunction of some sort. "An injunction is the usual and standard remedy once trademark infringement has been found." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:1 (4th ed.).

But "[a] district court may abuse its discretion where a permanent injunction in a trademark case is too broad." *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299 (2d Cir. 1999). "It is well established that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 128 (4th Cir. 2011). And this Court "will vacate an injunction if it is broader in scope than that necessary" to do so. *Id.* Here, the district court's injunction—adopted word-for-

word from Reynolds' proposal, without comment or opinion—reaches far more broadly than what is "necessary" to prevent any likelihood of consumer confusion or protect Reynolds' goodwill in its trade dress.

### A.    An Injunction for Trade Dress Infringement Must Be Tailored to Prevent Consumer Confusion

In a unregistered trademark or trade dress case, "[t]he nature of common-law trademark rights in large measure determines the appropriate scope of any injunctive relief." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 269 (4th Cir. 2003). Thus, in evaluating the district court's injunction, it is important to keep in mind that the purpose of the Lanham Act's trade dress protection is "to secure to the owner of the mark the goodwill of his business" and "to protect the ability of consumers to distinguish among competing producers." *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 368 (4th Cir. 1999) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992)). It is "obviously not intended to create a barrier to competition by preventing the use of distinguishable trademarks to market similar goods through identical channels." *Anheuser-Busch, Inc.*, 962 F.2d at 320.

The Act strikes this balance by requiring the owner of protected trade dress to prove that the accused packages not only share certain elements of the protected trade dress, but combine those elements "in a way that, viewed as a whole, is likely to confuse consumers." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d

44

837, 843 (9th Cir. 1987). Competitors are free to utilize "individual features" of protected trade dress by "arrang[ing], alter[ing], and combin[ing them] with other features so as to avoid potential confusion." *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1275 (10th Cir. 1988).

In other words, in a trade dress infringement case as in any other trademark infringement case, likelihood of confusion is the "keystone of infringement." *Sara Lee*, 81 F.3d at 462. Injunctive relief should therefore be tailored to that end. *See Merch. & Evans, Inc. v. Roosevelt Bldg. Prods. Co.*, 963 F.2d 628, 639-40 (3d Cir.) ("courts should tailor trademark remedies to decrease the likelihood of confusion without unnecessarily inhibiting competition"), *abrogated on other grounds by Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992). And while some Circuits have held that a district court may require a defendant who has been found to have infringed in the past to keep a "safe distance" from future infringement, *see, e.g.*, *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 220 (2d Cir. 2003), even those courts require any injunction to be "tailored to achieve the goal of protecting the consuming public from confusion," *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1548 (11th Cir. 1986).

### B. The Injunction Is, in Reality, a Series of Injunctions That Enjoins Far More Than Reasonably Necessary to Prevent Confusion

Although styled as a single injunction, Reynolds' injunction adopted by the district court actually imposes a series of restrictions based on the three individual

elements of Reynolds' overall trade dress: the color blue, the silver "tri-arch", and the color pink (or, for the non-stick box, yellow). The district court enjoined Handi-foil not only from using the actual package designs found to infringe Reynolds' trade dress rights, *see* JA268, but a whole host of designs that bear no resemblance to the accused packages, including:

- *any* "design that uses a different colored tri-arch element to separate any two colors from each other";

- *any* "design that uses 2-5 colored lines in an arc that is 27°-37° from vertical";

- *any* "design that uses 2-5 straight diagonal lines," where 40% of the box face, started from one end, is blue;

- *any* design that uses Reflex Blue on more than 25% of the face, where the box is two-colored with "one color on the left side of the box and the other color on the right side of the box";

- *any* "design that includes the color Coral on more than 15% of the face," where "coral" is defined as any of 35 Pantone colors;

- *any* design that includes any of 54 Pantone blue colors in an entirely blue area on 60% or more of the left side of the face when the face includes two colors, with the other color on the right side; and

- *any* design that includes any of 48 additional Pantone blue colors in an entirely blue area on 75% or more of the left side of the face when the face includes two colors, with the other color on the right side.

JA269-70.

These separate restrictions, set out in paragraphs (b)(2) through (b)(7) of the compound injunction, impose on Handi-foil many more burdensome restrictions

than necessary to prevent consumer confusion or provide any "safe distance" that might be required. To the contrary, each of these provisions singles out *elements* of Reynolds' claimed trade dress and enjoins their use in any manner whatsoever, without any evidence or any reason to believe that those elements, in isolation, would likely confuse anyone.

Indeed, Reynolds argued just the opposite at trial, claiming that Handi-foil's boxes infringed because they *combined* the elements of Reynolds' trade dress in a confusing way. Reynolds' expert expressly stated that "likelihood of confusion question" looked at "how the elements themselves are combined together, not a specific articulated element." JA531. She testified that foil boxes can "use[] those elements in a different way . . . that's not infringing" because they do not "cause[] consumers to be confused." JA516. And she described her chosen control box for her survey as "very good because it uses those elements in a different way." JA515-16.

In this respect, Reynolds' expert was completely right. And pictures are worth thousands of words in demonstrating as much. Each of the following hypothetical package designs for Handi-foil aluminum foil wrap would be barred by one of the injunction's individual-element restrictions—and yet no reasonable person could believe any of them are likely to be confused with Reynolds' protected trade dress:



*See* JA269 ¶ (b)(3) (enjoining any box that has a 30° arc of 2-5 lines anywhere on the box).



*See id.* ¶ (b)(6) (enjoining any box that is more than 15% pink).



*See* JA269-70 ¶ (b)(7)(A) (enjoining any box with one of 54 shades of blue extending from the left side over 60% of the box).



*See* JA269 ¶ (b)(2) (enjoining any box with a tri-arch separating any two colors).

48

It takes only a modicum of creativity to imagine an endless stream of similar hypothetical, unconfusing but prohibited designs.  But, in fact, not even that creativity is required.  At trial, Reynolds' chief marketing officer Bryla testified that the "overall look and feel" of another *actual* foil wrap box, for Kmart's Smart Sense box, "*is nothing like* Reynolds Wrap," JA566-67 (emphasis added).  Yet it too would likely violate the injunction:



JA854-60; *see* JA270 ¶ (b)(7)(B) (barring any box that is 75% blue, if the blue color extends from the left and second color is on the right).  Bryla was right. Neither Kmart's box nor many other designs covered by the injunction would ever reasonably be confused with Reynolds' distinctive Reflex Blue and coral box with a silver tri-arch divider.

This Court and other courts have not hesitated to narrow or vacate injunctions that impede healthy competition by unnecessarily broadening the plaintiffs' trademark or trade dress rights.  *See, e.g.*, *Emergency One,* 332 F.3d at 269 (vacating injunction that provided nationwide protection without factual basis of nationwide use); *Coach, Inc. v. We Care Trading Co.*, 67 F. App'x 626, 631 (2d Cir. 2002) (vacating an injunction on the use of certain individual features of

plaintiff's trade dress in the absence of "proof in the record that [those individual features alone] would cause a likelihood of confusion"); *AmBrit, Inc.*, 812 F.2d at 1548-49 (narrowing an injunction that "broadly preclude[d] Kraft from featuring the color royal blue on a textured foil wrapper" in ways that would not cause confusion); *Samara Bros., Inc. v. Wal-Mart Stores, Inc.*, 165 F.3d 120, 126 (2d Cir. 1998) (vacating an injunction that covered individual elements as overbroad), *rev'd on other grounds*, 529 U.S. 205 (2000).  This Court should do the same here.

## CONCLUSION

For the foregoing reasons, the requested relief should be granted.

November 12, 2014                    Respectfully submitted,

                                     s/ David K. Callahan
                                     David K. Callahan
                                     LATHAM & WATKINS LLP
                                     330 North Wabash Avenue
                                     Suite 2800
                                     Chicago, IL 60611
                                     (312) 876-7700

                                     Jonathan Y. Ellis
                                     Jennifer M. Halbleib
                                     LATHAM & WATKINS LLP
                                     555 Eleventh Street, NW
                                     Suite 1000
                                     Washington, DC  20004
                                     (202) 637-2200

                                     *Counsel for Defendant-Appellant/Cross-Appellee Handi-foil Corp.*

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

Counsel for Defendant-Appellant/Cross-Appellee Handi-foil Corp. hereby certifies that:

1.  This Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The Brief contains 11,016 words (as calculated by the word processing system used to prepare this brief), excluding the parts of the Brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.  This Brief complies with the type face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The Brief has been prepared in proportionally spaced typeface using Microsoft Word in 14 point Times New Roman style font.

Dated: November 12, 2014                    Respectfully Submitted,

                                            s/ David K. Callahan
                                            David K. Callahan
                                            LATHAM & WATKINS LLP
                                            330 North Wabash Avenue
                                            Suite 2800
                                            Chicago, IL 60611
                                            (312) 876-7700

*Counsel for Defendant-Appellant/Cross-Appellee Handi-foil Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of November, 2014, the foregoing Opening Brief for Defendant-Appellant/Cross-Appellee was filed with the clerk's office for the United States Court of Appeals for the Fourth Circuit and served on counsel of record via the Court's CM/ECF system.

s/ David K. Callahan
David K. Callahan